## Texas Midland Railroad v. Ella Dean.

### No. 1405.  Decided March 27, 1905.

**1.—Passenger—Liability of Railway for Act of Servant.**

The duty of proper treatment owed by a carrier to his passenger covers the conduct of all employes placed where they come in contact with the passenger and render to him services due by the carrier, though the act complained of was not done in pursuance of the duties of the servant's employment nor for the master's service.  (Pp. 520, 521.)

**2.—Same—Baggage Master—Unlawful Arrest.**

A railway company was liable for the wrongful act of its servant employed to check baggage and attend to the waiting room of its station, in instigating or assisting in the unlawful arrest by a policeman of one in the act of taking passage on the train at the station, though the act was not done in pursuance of the duties of his employment, nor while actually engaged in their discharge, nor for the promotion of any interest of the company.  (Pp. 519-521.)

**3.—Charge—Evidence.**

Facts considered and held not sufficient to justify a charge submitting liability for the act of a servant not actually participating in an unlawful arrest made by a policeman, on the ground of his having advised or instigated it.  (Pp. 521, 522.)

**4.—Damages—Evidence—Character—Feelings.**

Though evidence of bad character of one suing for damages for unlawful arrest is not admissible in defense or mitigation, where plaintiff sought damages by reason of shame and humiliation caused by the arrest, it was admissible, as bearing on such damages, to ask her if she had not often been arrested on similar charges.  (P. 522.)

**5.—Same.**

Where plaintiff sought damages for shame and humiliation caused by an unlawful arrest on a charge involving an imputation against her chastity, it was admissible to prove, as bearing on such damages, that she was the keeper of a house of prostitution in another town.  (Pp. 522, 523.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Lamar County.

Ella Dean sued the railway company for unlawful arrest, and had judgment for damages which was affirmed on appeal.  The company then obtained writ of error.

*Ogden & Brooks, A. H. Dashiell,* and *T. L. Stanfield,* for plaintiff in error.—Where an arrest is made on the advice of the public prosecutor after a full and fair statement of all the facts have been made to him the party making the arrest is not liable for damages to the person arrested.  Sebastian v. Cheney, 86 Texas, 497; Brady v. Insurance Co., 24 Texas Civ. App., 467.

There was no evidence that the baggage agent had authority to make

arrests or that such an act was within the apparent scope of his authority.

There was no evidence from which even the presumption could be drawn that the defendant's employe, Barton, knew or by the exercise of ordinary care could have known that Phillips was making arrest without a warrant.

The defendant would not be responsible in damages for any acts of an employe while assisting a duly authorized officer of the law in discharging his apparent duty.

The court erred in sustaining the exception and excluding from the jury the testimony of the plaintiff on cross-examination, to the effect that she was living at the time of her arrest a common prostitute, and that she was an inmate of a house of prostitution in the city of Paris, and that she is now the proprietress of a house of prostitution in the city of Marshall, Texas, as shown by defendant's bill of exception number 1. The court erred in sustaining the exception and excluding from the jury the testimony of the plaintiff on cross-examination, to the effect that she had been arrested before as shown by defendant's bill of exception number 2. The testimony sought to be elicited affected the damages sustained by appellee, and tended to show that the shame and humiliation suffered by one of her character by one arrest in a public place could not be very great. Houston & T. C. Ry. Co. v. Ritter, 41 S. W. Rep., 754; Parker v. Coture, 21 Atl. Rep., 494; Sutherland on Dam., 3 ed., sec. 163; Hardy v. Stevenson, 29 La. Ann., 172; Dougherty v. Gilbert, Tapp. (Ohio), 38; Fenelon v. Butts, 10 N. W. Rep., 501; 3 Cyc. of Law and Pr., 1095.

There is no evidence in this case that the arrest was made or caused by the advice or instigation of Barton, and therefore it was error for the court to submit this issue. Joske v. Irvine, 91 Texas, 574.

*W. F. Moore* and *Fred S. Dudley,* for defendant in error.—The court did not err in sustaining appellee's special exception to so much of defendant's answer as alleged that before the arrest complained of by appellee "the officer or officers making the arrest consulted said G. O. Green, who was then and there the legal advisor of the people of the city of Commerce," etc., for the reason that plaintiff's cause of action was not predicated upon a malicious prosecution, nor did she sue for exemplary damages, but her suit is based upon an alleged illegal arrest and assault committed upon her person by one W. R. Barton, agent and employe of appellant, whilst she was a passenger of appellant, and the good faith of an "officer or officers" was no defense to plaintiff's said cause of action nor to her claim for actual damages on account of such illegal arrest; and further because such answer does not allege that said W. R. Barton was aware of such alleged consultation with said G. O. Green, nor that said G. O. Green advised that said arrest would be legal. Karner v. Stump, 12 Texas Civ. App., 463; Frazier v. Turner, 76 Wis., 562; Pincham v. Dick, 70 S. W. Rep., 334.

For an unlawful assault or arrest committed or participated in by

an agent or employe of a railway company upon one of its passengers, the railway company is liable whether or not at the time of such assault or arrest such employe was acting within the scope of his authority, and in this case the appellee having alleged that she was unlawfully arrested and asaulted by one W. R. Barton, an agent and employe of the appellant, and another person, whilst she was a passenger of appellant, and the proof showing this, it was immaterial to her right to recover that she also alleged that at the time of such arrest and assault said Barton was acting within the scope or apparent scope of his authority, or as to whether or not the proof showed this to be the case. Gulf C. & S. F. Ry. Co. v. Conder, 23 Texas Civ. App., 488; St. Louis S. W. Ry. Co. v. Franklin, 44 S. W. Rep., 702; Joske v. Irwin, 43 S. W. Rep., 279, 280; Gillingham v. Ohio River Ry. Co., 29 Am. St. Rep., 827; Duggan v. Baltimore, etc., Ry. Co., 39 Am. St. Rep., 672.

The plaintiff did not allege that she was injured in her reputation or character on account of the illegal arrest and assault committed upon her, and evidence offered by the defendant to show that plaintiff was a woman of bad repute, and that she had been arrested before, was irrelevant, and properly excluded by the court. Ryburn v. Moore, 72 Texas, 87; Pinkerton v. Verberg, 78 Mich., 573; Smith v. Hyndman, 64 Mass. (10 Cush.), 554; Russell v. Shuster, 8 Watts & S., 308.

If it be true that the court should not have submitted the issue as to whether or not the arrest was caused by the advice or instigation of Barton, for the reason that there was no evidence to justify such charge, it could not have had any influence with the jury, and was therefore harmless error, for the jury must be allowed some degree of intelligence in the making of their verdict. However, the evidence was sufficient to authorize and call for the charge complained of.

WILLIAMS, Associate Justice.—This was an action brought by the defendant in error to recover of the railroad company damages for an illegal arrest and detention of herself, alleged to have been made by an officer of the town of Commerce and one Barton, the baggage master of defendant at its station at that town. The plaintiff recovered judgment which was affirmed by the Court of Civil Appeals and is now before this court on writ of error.

The evidence shows that the arrest was made by one Phillips, a policeman of Commerce, without any affidavit or warrant, and fails to show that plaintiff had committed any offense. Plaintiff adduced testimony to the effect that Barton voluntarily assisted the policeman in making the arrest, which was sharply disputed by the testimony for the defense. The plaintiff testified that these parties, when asked to state the charge against her, said they did not know, but that they had been instructed to make the arrest by the city marshal or city attorney. Phillips testified that he told plaintiff that he arrested her for "unbecoming conduct." A complaint against her was filed the next morning by Barton charging "vagrancy," from which she was finally discharged. None of these

actions was taken upon any business of the railroad company, the arrest, in the first instance, and the making of the complaint by Barton being done at the instance of the city attorney.

Plaintiff, some hours before her arrest, had come to Commerce over another railroad, and after waiting about the station for the arrival of defendant's passenger train, had procured a ticket from it to continue her journey over its road to Paris, and when arrested was going from the station to the passenger train, which had arrived, to take passage thereon.

Barton was baggage master at the station and states that his duties were "to check baggage and attend to the waiting room." He also states, in explanation of his presence near the place of the arrest, that it was his duty to be there. The depot was conducted under the charge of the station agent, and there is no evidence that he or any of the trainmen had any connection with or opportunity to prevent the arrest.

Under this state of facts the defendant asked the court to instruct the jury, and contends here that it is not responsible for the action of Barton in assisting in the unlawful arrest. Our first inclination was to take this view of the question, but further consideration and examination of the authorities has led us to the conclusion that it is unsound. Plaintiff was a passenger and was under the protection of the defendant and of those of its servants to whom it committed the performance of the various duties to her which it assumed by the contract of carriage. The question in such cases is, what servants are chargeable with the performance of the carrier's undertaking so that their breach of it will be ascribed to the carrier. It has been generally declared, by highest authority, that the principle includes all of the members of the crew of a vessel or a train on which the passenger is being transported. In the case of Bryant v. Rich. (106 Mass., 188), the doctrine is thus stated: "As a general rule, the master is liable for what his servant does in the course of his employment, but in regard to matters wholly disconnected from the service to be rendered, the master is under no responsibility for what the servant does or neglects to do. The reason is that, in respect to such matters, he is not a servant. If, therefore, any of the officers or men connected with the running of the defendant's boat had met the plaintiff in the street or elsewhere, in a position wholly disconnected with their duties to the defendants, and committed an assault and battery upon him, it is clear that the defendants would not have been liable. * * * But as plaintiff was a passenger for hire, we think it better to consider what the contract was between them. This has been discussed in the following cases: Chamberlain v. Chandler, 3 Mason, 242; Nieto v. Clark, 1 Clifford, 145; Baltimore & Ohio Ry. Co. v. Blocher, 27 Md., 277; Pittsburg Ft. W. & C. R. Co. v. Hinds, 53 Pa. St., 512; Simmons v. New Bedford, Vineyard & Nantucket Steamboat Co., 97 Mass., 361; Milwaukee & M. R. Co. v. Finney, 10 Wis., 330. It has also been thoroughly discussed in Goddard v. Grand Trunk Railway Co., 57 Me., 202. These cases were cited by

Clifford, J., in Pendleton v. Kinsley, 3 Clifford, 416, and the terms of the contract for carriage by water are well stated by him in conformity with the authorities, as follows: 'Passengers do not contract merely for shiproom and transportation from one place to another, but they also contract for good treatment, and against personal rudeness and every wanton interference with their persons either by the carrier or his agents employed in the management of the ship or other conveyance.' In respect to such treatment of passengers, not merely the officers but the crew are the agents of the carriers. In Chamberlain v. Chandler, 3 Mason, 242, cited above, Story, J., says that kindness and decency of demeanor is a duty not limited to the officers, but extends to the crew. The interpretation of the contract of the carrier which is given in the cases above cited is not unreasonable. It is not more extensive than the necessities of passengers require. Nor is it difficult to perform. The cases in which it is violated by servants even of the lowest grade, on board a ship or engaged in the management of a railroad train, are rare, and the carrier rather than the passenger ought to take the risk of such exceptional cases, the passenger being necessarily placed so much within the power of the servants."

In that case the owners of a steamboat were held responsible for a wanton assault made upon a passenger by the steward and waiters in the saloon. In White v. Railway Co., 115 N. C., 631, the same conclusion was reached concerning an assault made by the engineer of a steamboat. The principle has been applied to gatekeepers, brakemen and porters and baggage masters on trains and to drivers on street cars. Hanson v. Railway Co., 62 Me., 84; Gasway v. Railway Co., 58 Ga., 216; Williams v. Palace Car Co., 40 La. Ann., 417; Dwinelle v. Railway Co., 120 N. Y., 117; Springer Transportation Co. v. Smith, 16 Lea (Tenn.), 498; Sherley v. Billings, 8 Bush (Ky.), 147.

It appears that the baggage master was one of the employes selected by the defendant to render service to passengers about the station provided for their use and that he was present and on duty when the arrest was made. In such places the passenger is as much entitled to proper treatment and protection as when he is aboard a conveyance, and employes put there to be brought in contact with passengers and to render to them services due to them from the carriers are as fully within the principle stated as are such employes upon trains and vessels. The case is therefore governed by the broad principle deduced from the obligation of the contract and is not of the class in which a person employed by another for some purposes commits a wrong while he is not engaged in his master's business. One employed as was Barton is engaged in the master's business, in respect of the duty of according proper treatmen to a passenger, when he is on duty in such capacity around such a place. The fact that he is not at the particular time actively doing anything for the carrier, does not make conduct on his part violative of the master's obligation any the less attributable to the master.

The duty defined did not, we think, obligate either the carrier or its

servants to oppose active resistance to the officer of the law, or to inquire into the authority under which he was assuming to act. The law affords other remedies for its violation by its officers. The liability of the defendant must arise, if at all, from the evidence showing that its servant instigated or assisted in the arrest. Duggan v. Baltimore & Ohio Ry. Co., 39 Am. St. Rep., 676. The trial court did not hold otherwise, but in submitting the case to the jury, after charging that defendant would be liable if Barton assisted in making the arrest, instructed further: "Or if you believe from the evidence that said arrest,' if there was an arrest, and detention was made as alleged by plaintiff, and not actually participated in by said W. R. Barton, and that the same was made without warrant charging her with any violation of law, but was made or caused by the advice or instigation of said Barton, and that said Barton was baggage master of defendant and was in the employ of defendant as one of its servants or employes at said time, then you will find for the plaintiff."

As we have stated, the jury could have properly found from the evidence that Barton did not assist or participate in the act of Phillips. If they so found, there was no evidence of the existence of the further ground of liability, viz., that he advised or instigated it. He was present and witnessed it, and, about five minutes before it was made, was asked by Phillips what he thought about arresting plaintiff, but it does not appear that he in any way encouraged it. The complaint that he made next morning was at the request of the city attorney, because as he states, "I had seen it happen," meaning doubtless that upon which the charge was based, the character of which is not disclosed by the evidence. We fail to see in this anything from which the jury should, after finding that Barton did not aid in the arrest, have inquired, as the charge directed them to do, whether or not he instigated it.

We are further of the opinion that the court improperly refused to allow the defendant to ask plaintiff if she had not often before been arrested upon similar charges. The plaintiff sought to recover damages for the shame and humiliation caused by this arrest upon a charge which, as vaguely as it is referred to in the evidence, yet plainly appears to have carried with it an imputation upon her chastity, and the fact that arrests had often before been made upon like charges was one which the jury might properly consider in determining the degree of the mental distress occasioned. Parker v. Coture, 21 Atl. Rep., 494; 3 Cyc. of Law and Proc., 1095, authorities cited in note 88; Sutherland on Dam., sec. 163.

We think also for the same reason that the court erred in holding that evidence was irrelevant to show that at the time of the arrest plaintiff was the keeper of a house of prostitution in another town than that of her arrest. Certainly it will hardly be imagined that one so engaged would suffer so acutely from an arrest upon an imputation like that in question as would a pure and virtuous woman. The question

whether or not plaintiff herself could be compelled to answer such a question was not raised. We think the evidence was not irrelevant.

It is true that an action for an illegal arrest does not, like actions for defamation or malicious prosecution, involve the character of the plaintiff, and hence evidence of bad character, merely, is not admissible in defense of such actions as this, and this we understand is what was held in the authorities relied on by plaintiff's counsel, among which is Ryburn v. Moore, 72 Texas, 87, 88. ·The question which was there excluded was plainly improper because it violated the rule just stated and called mainly for evidence of character. If one of the facts called for, in the "sweeping question" asked, would have fallen within our present holding, as it seems to us it would, it was so connected with objectionable matter that the court was not called upon to consider it separately, and it is plain, from the opinion, that it was not so considered. What the court said was inadmissible was evidence tending to show bad character. Where the evidence offered directly bears upon one of the elements of damage claimed, we know of no principle which excludes it.

For the error in the charge and in the exclusion of this evidence, the judgment must be reversed. The questions not discussed in this opinion were correctly disposed of by the Court of Civil Appeals.

*Reversed and remanded.*