EDWARD SHEA *vs.* DANIEL F. SULLIVAN & others.
T. COSTELLO *vs.* SAME.
A. MARKEY *vs.* SAME.

Worcester. September 27, 1927. — November 22, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*False Arrest and Imprisonment. Minor. Release. Waiver. Evidence,*
Competency, Relevancy and materiality. *Practice, Civil,* Exceptions.

An action for unlawful arrest and imprisonment cannot be maintained against a railroad corporation on evidence showing merely that, upon a passenger on a train of the defendant going to Boston pointing out the plaintiffs to the conductor as persons who had stolen his money, the conductor said, "I will take care of this," or "I will take care of it"; that the conductor sent word ahead to the train dispatcher that he had "a passenger who says he has been relieved of $85"; that when the train arrived at Brighton station in Boston, police officers boarded it and the conductor pointed to the complaining passenger and said, "This is the man that wants the officers. There is the fellows there," pointing to the plaintiffs; that the passenger, when the officers asked, "Who wants the officers?" stated, "I do. There are the fellows who stole my pocket book"; whereupon the officers arrested the plaintiffs: it did not appear that the police officers in arresting the plaintiffs acted under the direction of any officer or agent of the defendant railroad company.

Subject to exception by the plaintiff at the trial of an action by a minor against police officers for unlawful arrest and imprisonment, there was admitted in evidence a document signed by him and addressed to the police officer in charge of the division with which the defendants were connected "and all other officers assisting in my arrest or detention," in which he requested that he be released from custody without being brought before a court and, in consideration of such release, discharged and waived any and all claims for damages he might have "against you or against other members of the police department for the city . . . because of my arrest and detention . . . and more especially all claims for damages for illegal arrest and imprisonment which I may have against" the defendants "and all other officers concerned in my arrest and detention." The judge charged the jury in substance that, although a minor, the plaintiff might waive his right to be brought before the court; and "that if there was an existing cause of action because of the original invalidity of the arrests, then there is nothing in" the document signed by the plaintiff "to release any such cause of action." The jury found for the defendants. *Held,* that

(1) From the finding for the defendants, it was apparent that the jury found that the defendants made the arrest upon reasonable and probable cause and that the plaintiff freely and voluntarily waived his right to be arraigned in court;

(2) A minor is not precluded because of his minority from waiving his right to be brought before a criminal court when arrested for committing a criminal offence;

(3) The exceptions must be overruled.

At the trial of the action above described, the judge excluded a question asked in redirect examination of the minor plaintiff, whether, when he signed the document above described, he knew what his "rights" were against the defendants or any one else named in the document. The judge had given the plaintiff leave to inquire "if there was any discussion of his rights in any given particular," and the witness had testified that at that time there was "no discussion at all" between him and the officer in charge or any officers "standing around in the room at that time"; and, in response to a question by the judge, he had stated in substance that nothing was said in his presence "about being taken into court or being taken before the judge." *Held,* that the exclusion was correct.

It also was proper at the trial of the action to exclude evidence that, while the minor plaintiff was confined at the police station, officers other than the defendants charged him with being a pickpocket and deserving of sentence to the State prison.

THREE ACTIONS OF TORT, each against Daniel F. Sullivan, Michael Pierson and Edward Skehan, "and Boston and Albany Railroad Co., New York Central Railroad Co., Lessee," for unlawful arrest and imprisonment. Writs dated June 6, 1924.

In the Superior Court, the actions were tried together before *Lummus,* J. The "releases" signed by each of the plaintiffs and admitted in evidence, subject to their exceptions, were in the following form:

## "COMMONWEALTH OF MASSACHUSETTS.

Sept. 4, 23.

"To THE OFFICER IN CHARGE OF Division No. 14, and all other officers assisting in my arrest or detention. Patrol. Malcolm Pearson, Div. 14.

"I. . . . [name here inserted], having been arrested the 2nd day of Sept. 1923, for the following offences, namely Suspicious Person hereby request that I be released from custody without being brought before a court, and, in consideration of my being released as herein requested, I hereby discharge and waive any and all claims for damages which I may have against you or against other members of the Police Department for the City of Boston because of my arrest and detention on said day and up to and including the

date hereof, and more especially all claim for damages for illegal arrest and imprisonment which I may have against Patrolman Pearson, Div. 14, & all other officers concerned in my arrest and detention.

"Dated at Boston this 4th day of Sept. 1923."

The plaintiff Shea in cross-examination testified that he was a graduate "of the Commercial High School" and read the document before he signed it.   In redirect examination the trial judge gave his counsel leave to ask him "if there was any discussion of his rights in any particular," and he testified that there "was no discussion at all."   In response to a question by the judge, he testified that there was nothing said between him and the officers, or by anybody in his presence, "about being taken into court or being taken before the judge."   Subject to an exception by the plaintiff Shea, the judge then excluded a further question, whether, when he signed the document, he knew what his "rights" were "against the Boston and Albany Railroad, against the police department of Boston, against Patrolman Pierson, Sullivan and Skehan, or any other officer in charge of the police department of Boston or at Brighton, or the persons comprehended in this document."

Other material evidence is stated in the opinion.

A verdict for the defendant railroad company was ordered. The jury found for the other defendants.   The plaintiffs alleged exceptions.

*C. E. Tupper*, for the plaintiffs.

*F. W. Knowlton*, for the defendant New York Central Railroad Company.

*F. B. Spellman*, for the defendants Sullivan and others.

CROSBY, J.   These are actions of tort to recover for the alleged false arrest and imprisonment of the plaintiffs.   The cases were tried together.   At the close of the evidence against the defendant railroad company, a verdict was directed in its favor subject to the exception of the plaintiffs. At the close of the entire evidence, the cases against the other defendants were submitted to the jury, who returned verdicts for those defendants.   All the material evidence is set forth in the bill of exceptions.

There was evidence tending to show the following facts: On September 2, 1923, the plaintiffs boarded a train of the defendant railroad company at Worcester with tickets for Boston; shortly thereafter one Turgeon, another passenger who boarded the train at Worcester, reported to the assistant conductor that his pockets had been picked and he had been robbed of $85, and pointed out the plaintiffs as the persons who had stolen his money. When the conductor came into the car where Turgeon and the plaintiffs were seated, Turgeon told him that the plaintiffs had taken his money; the conductor spoke to the plaintiffs, who denied the charge, and the conductor said, "I will take care of this," or "I will take care of it." When the train reached Riverside the conductor called the operator in the tower and said to him, "Tell Boston Dispatcher that we have a passenger who says he has been relieved of $85." Upon the arrival of the train at the Brighton station, three police officers boarded it and asked several times who had called for officers. The plaintiffs offered evidence to show that the conductor then pointed to Turgeon and said, "This is the man that wants the officers. There is the fellows there," pointing to the plaintiffs. Turgeon testified that when the officers boarded the train they asked, "Who wants the officers?" And that he said to them, "I do. There are the fellows who stole my pocket book." Whereupon the individual defendants, after talking with the plaintiffs, took them from the train to the police station in Brighton where they were held for two days, and were then released without being taken to court after each had signed a waiver or release of any claim for damages against the individual defendants on account of his arrest and imprisonment.

Upon a careful consideration of the evidence most favorable to the plaintiffs, it is obvious that there is nothing which would warrant a finding that the police officers in arresting the plaintiffs acted under the direction of any officer or agent of the defendant railroad company. The evidence shows that all the conductor did was to inform the officers what he had been told by Turgeon. The officers acted solely upon their own initiative and responsibility from information which they had received. It follows that the trial judge rightly directed a verdict in favor of the defendant railroad

company, and that the exception to such direction must be overruled. *Zinkfein* v. *W. T. Grant Co.* 236 Mass. 228, 232, and cases therein cited.

The other defendants, as policemen, had the right to arrest the plaintiffs without a warrant if they had probable and reasonable ground to suspect that they had committed a felony. There was evidence that the plaintiffs had been charged by Turgeon with stealing money from his person. As an offence of that nature could be punished by imprisonment in the State prison, it was a felony. It is the duty of the officer when making an arrest to take the person so arrested before a magistrate unless he waives this requirement of the law. *Joyce* v. *Parkhurst*, 150 Mass. 243. *Bates* v. *Reynolds*, 195 Mass. 549. *Keefe* v. *Hart*, 213 Mass. 476. *Wax* v. *McGrath*, 255 Mass. 340.

The evidence shows that the plaintiffs Shea and Costello were minors at the time the releases or waivers were signed by them respectively. The question is whether the exception to the admission of the releases should be sustained. There was some evidence tending to show that the plaintiffs signed the releases under duress; that they were induced to do so by the officers upon representations that they could not obtain their freedom without going to court unless they so signed.

The trial judge instructed the jury in part as follows: "There is no evidence that they [the defendants] had authorized Sergeant Brown, or Officer Brown as he then was, or the captain, or any one else to make the contracts for them as their agents. There is little or no evidence of any consideration for those contracts as a matter of contract law, and on the whole, I instruct you that, if there was an existing cause of action because of the original invalidity of the arrests, then there is nothing in these documents signed by these plaintiffs on September 4, 1923, to release any such cause of action. . . . A man who was to be discharged from custody might well prefer to be discharged from the police station without going into court at all. But he has the right, if he wishes to, to go into court, and the police officers having him in custody cannot deprive him of that right without his free consent. It is only his free waiver of that right or election to be discharged from the police station rather

than from the court that justifies the police officers in failing to bring him into court. Now the present plaintiffs say that they did not make that free election. I think the question of minority is not important as to this election to be discharged from the police station rather than from the court room. It is well settled in criminal procedure that a minor, a person under the age of twenty-one years, may represent himself in criminal proceedings. He may waive a jury by failing to appeal from a district court sentence. He may plead guilty or not guilty and may be sentenced on his plea of guilty; and I instruct you that he may, if he does it by his free consent elect, although a minor, to be discharged from the police station rather than from the court room. So the cases of the three plaintiffs . . . may be considered without reference to minority, except so far as their age may bear upon the question whether they acted with their free consent or not." Later in the charge the judge told the jury in substance that if the plaintiffs were induced by the police officers to believe that unless they signed the papers they could not obtain their freedom, then they did not voluntarily elect to be discharged from the police station rather than from the court room. The plaintiffs excepted only to that part of the charge "which dealt with the question as to whether these minors in signing these documents could be said to waive their rights to go before the court." This exception cannot be sustained.

Although the releases were admitted in evidence, the judge afterwards in his instructions repeatedly told the jury that, if they found the arrests were made without reasonable and probable cause, there was nothing in the signed papers to release a cause of action founded by the plaintiffs upon the original illegality of the arrests. Afterwards in the course of the charge the judge stated: "I instruct you that if there was an existing cause of action because of the original invalidity of the arrests, then there is nothing in these documents signed by these plaintiffs on September 4, 1923, to release any such cause of action." These instructions were in no respect withdrawn, nor is there anything in any other part of the charge which modified or in any way qualified them. It must be assumed that the jury adopted the in-

structions so given, and as they returned verdicts for the defendants it is apparent that they found the officers made the arrests upon reasonable and probable cause, and that these plaintiffs freely and voluntarily waived their rights to be arraigned in court.

Independently of whether the plaintiffs could release the defendants from liability, the trial judge submitted to the jury the question whether they voluntarily waived their right to be taken before a court. We are of opinion that the documents signed by them were competent evidence of waiver. A minor is not precluded because of his minority from waiving his right to be brought before a criminal court when arrested for committing a criminal offence.

The question asked of the plaintiff Shea, whether, when he signed the "release," he knew what his "rights" were against any of the defendants or persons named in the document, on the record properly was excluded. The rights of the plaintiffs were fully and accurately defined by the judge in his instructions to the jury.

The plaintiffs offered to show that, while the plaintiff Shea was confined at the police station, officers other than the defendants charged him with being a pickpocket and deserving of sentence to the State prison. This evidence was rightly excluded. The defendants were not responsible for statements made by others when they were not present.

The instructions to the jury fully covered all questions of law involved. We find no error in the conduct of the trial. It follows that the entry in each case must be

*Exceptions overruled.*