**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**DECEMBER SESSION, 1997**

FILED

February 13, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **CHARLES EDWARD ORREN,** | ) | |
| | ) | **No. 03C01-9704-CR-00141** |
| **Appellant** | ) | |
| | ) | **JOHNSON COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. LYNN BROWN, Judge** |
| **HOWARD CARLTON, Warden** | ) | |
| **and STATE OF TENNESSEE,** | ) | |
| | ) | **(Writ of Habeas Corpus)** |
| **Appellee** | ) | |

For the Appellant:

**Charles Edward Orren**, *Pro Se*
N.E.C.C. #108907
P.O. Box 5000
Mountain City, TN 37683

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Michael J. Fahey, II**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## O P I N I O N

The appellant, Charles Edward Orren, appeals the Johnson County Criminal Court's dismissal of his *pro se* petition for writ of habeas corpus. The appellant was originally indicted by the Washington County Grand Jury for aggravated rape on May 6, 1985. He pled guilty to this charge in August, 1985 and received a sentence of thirty years imprisonment. The instant petition was filed on February 10, 1997. In seeking issuance of the writ of habeas corpus, the appellant contends that the judgment entered against him is void because the indictment failed to allege the *mens rea* of the offense charged. The trial court dismissed the appellant's petition finding that the allegations concerning the sufficiency of the indictment are not cognizable in habeas corpus proceedings and should have been raised on direct appeal. Additionally, the court included in its findings that, at the time of the offense, proof of a culpable mental state was not required. The appellant appeals the trial court's ruling.

## ANALYSIS

### A. Grounds for Habeas Corpus Relief

We first address the question of whether the sufficiency of an indictment can be reviewed or tested in a habeas corpus proceeding. It is well-established that, in Tennessee, habeas corpus relief is <u>only</u> available when a conviction is <u>void</u> because the convicting court was without jurisdiction or authority to sentence a defendant, <u>or</u> that a defendant's sentence has <u>expired</u> and the petitioner is being illegally restrained. <u>Archer v. State</u>, 851 S.W.2d 157, 164 (Tenn. 1993). A void judgment is one which shows "upon the face of the judgment or the record of the proceedings upon which the judgment is rendered" that the convicting court was without jurisdiction. Lack of jurisdiction was addressed by a panel of this court in <u>State v. Nixon</u>, No. 02C01-9612-CC-00484 (Tenn. Crim. App. at Jackson, Dec. 3, 1997),

2

wherein we held:

> 'Lack of jurisdiction' refers to <u>subject matter jurisdiction</u> which a defendant has no power to waive. <u>Pon v. U.S.</u>, 168 F.2d 373, 374 (1948). <u>See also</u> <u>State v. Seagraves</u>, 837 S.W.2d 615, 628 (Tenn. Crim. App. 1992). Subject matter jurisdiction is the power of the court to hear and decide a particular type of action.[1] . . . In reference to objections alleging failure to state an offense, the rationale is that if the indictment fails to include an essential element of the offense, no crime is charged and, therefore, no offense is before the court. <u>See</u> <u>State v. Perkinson</u>, 867 S.W.2d 1, 5-6 (Tenn. Crim. App. 1992).

Thus, when the mental state is an essential element of the offense and the requisite mental state cannot be fairly imported from the language of the charging instrument, the trial court is divested of the jurisdiction necessary to proceed with the criminal prosecution. <u>See</u> <u>State v. Hill</u>, 954 S.W.2d 725 (Tenn. 1997) (holding that the requisite mental state can be logically inferred from the alleged criminal conduct.); <u>State v. Marshall</u>, 870 S.W.2d 532, 537 (Tenn. Crim. App.), <u>perm. to appeal denied</u>, (Tenn. 1993); <u>State v. Dison</u>, No. 03C01-9602-CC-00051 (Tenn. Crim. App. at Knoxville, Jan. 31, 1997) <u>perm. to appeal denied</u>, (Tenn. Dec. 1, 1997) (holding that under our current criminal code culpability for aggravated rape is not an <u>essential</u> element of the offense). In its "Order of Dismissal," the trial court held that "a defect in an indictment is a matter which must be raised in the trial court and on direct appeal." While we acknowledge that various panels of this court have held that allegations concerning the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings, we are constrained to note that this holding paints with too broad a brush.[2] In accordance with <u>Archer</u>, we hold that the validity of the indictment may be challenged in a habeas corpus proceeding only upon grounds

---

[1]In the case before us, it is undisputed that the Washington County Criminal Court had exclusive original jurisdiction of the indicted criminal offense. <u>See</u> Tenn. Code Ann. § 16-10-102(1994).

[2]The cases commonly cited for the proposition that challenges to the sufficiency of an indictment may not be reviewed in habeas corpus proceedings are <u>Haggard v. State</u>, 475 S.W.2d 186, 187-88 (Tenn. Crim. App. 1971) and <u>Brown v. State</u>, 445 S.W.2d 669, 674 (Tenn. Crim. App. 1969). Both <u>Haggard</u> and <u>Brown</u> involved challenges not pertaining to the court's subject matter jurisdiction or whether the indictment failed to state an offense. Defects in the indictment, other than those challenging subject matter jurisdiction or failure to state an offense, are waived unless raised prior to trial. <u>See</u> Tenn. R. Crim. P. 12(b)(2).

that (1) it fails to properly charge an offense or (2) the convicting court was without jurisdiction.

## B. Sufficiency of Indictment

The indictment in the instant case charged as follows:

[t]hat CHARLES EDWARD ORREN heretofore, to wit, on or about the latter part of May, 1984, in the County aforesaid, did engage in unlawful sexual penetration of NLF,[3] a female of eleven (11) years of age, in violation of Section 39-2-603, Tennessee Code Annotated, and against the peace and dignity of the State of Tennessee.

The above language sets forth, verbatim, the crime of aggravated rape in the words of the corresponding statute as it existed on the date of the offense. See Tenn. Code Ann. § 39-2-603 (1982).

In determining whether an indictment fails to charge an offense because it has omitted the *mens rea* of the offense charged, it is first necessary to establish whether the crime occurred under the old or the new criminal code, i.e., before or after November 1, 1989. The new criminal code which, in large part, is an adoption of the MODEL PENAL CODE, marked a substantial departure from the old code which was common law in origin. Those offenses which occurred after November 1, 1989, the effective date of our current code, are governed by our supreme court's recent decision in State v. Hill, 954 S.W.2d at 725. In Hill, the court concluded that the omission of the *mens rea* element from an offense is not always fatal to the indictment. Id. at 726. A post-1989 indictment is legally sufficient if: (1) the language satisfies the constitutional requirement of notice to the accused, (2) its form meets the requirement set forth in Tenn. Code Ann. § 40-13-202 (Supp. 1996), and (3) the requisite mental state can be logically inferred from the alleged criminal conduct. Id. at 726-727.

---

[3]It is the policy of this court to refer to minors who are victims of sexual abuse by the use of their initials to protect their identity. See State v. Schimpf, 782 S.W.2d 186, 188 note 1 (Tenn. Crim. App. 1989).

If, however, the offense occurred prior to November 1, 1989, a different analysis is required.[4] Under the pre-1989 Criminal Code, the requisite mental state of the crime was often found in the statutory definition of the particular offense.[5] Thus, the court must review the indictment to determine whether the challenged indictment tracks the language of the statutory offense charged. Recitation of the statutory language gives rise to the presumption that the indictment sufficiently apprises the defendant of the mental element required. Cf. Campbell v. State, 491 S.W.2d 359, 361 (Tenn. 1973). A number of the statutory offenses under our old code, however, contained no defined mental state. This case, involving aggravated rape, illustrates one such example. Although no *mens rea* is included in the definition of the offense of aggravated rape, this does not mean, however, that none is required. If this were the situation then the crime of aggravated rape would be one of strict liability. See Dison, No. 03C01-9602-CC-00051. We note that the trial court's dismissal of this case was due, in part, to its finding that, prior to November 1, 1989, "the law . . . did not require the State to prove a culpable mental state" with respect to the offense of aggravated rape. This finding is erroneous. "[The] mere omission [from the statutory definition of the offense] of any mention of [the mental state] will not be construed as eliminating that element from the crimes denounced." Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 250 (1952); see also

---

[4]We note that, as a basis for its rationale, the decision in Hill relies upon Tenn. Code Ann. § 39-11-301(c) (1991) (requirements of culpability and the mental states of intentional, knowing or reckless). Obviously, to the extent that Tenn. Code Ann. § 39-11-301(1) and the mental states of "intentional, knowing or reckless," as they exist under our current criminal code, were not a part of our common law code prior to 1989, Hill is inapplicable to pre-1989 indictments. Although we find Hill not controlling for pre-1989 offenses, the principles of Hill are applicable. It has long been the rule in this state that where a statute creates an offense, the indictment must charge the facts and circumstances which constitute the offense as mentioned in the statute. Hill, 954 S.W.2d at 729; see also Campbell v. State, 491 S.W.2d 359, 361 (Tenn. 1973); Peek v. State, 21 Tenn. (2 Hum.) 78, 85-86 (1840). Although it is better to strictly pursue the words of the statute, it is sufficient if words of equivalent import or of more comprehensive import are used. See Campbell, 491 S.W.2d at 361; Peek, 21 Tenn. (2 Hum.) at 86.

[5]See, e.g., Tenn. Code Ann. § 39-2401 (murder required that the killing be malicious); Tenn. Code Ann. § 39-4202 (larceny required a felonious taking); Tenn. Code Ann. § 39-4217 (forgery required a fraudulent making); Tenn. Code Ann. § 39-801 (bribery required a corrupt offer); Tenn. Code Ann. § 39-501 (arson required malice). In sum, over twenty different terms are used throughout the pre-1989 Code to express the required mental state. David L. Raybin, *The Proposed Tennessee Criminal Code --General Interpretive Provisions and Culpability*, 41 TENN. L. REV. 131, 144 (1973). Clearly, one of the objectives in the enactment of our current criminal code was to alleviate the confusion that existed from the sheer number of different mental states and their varying definitions. This was accomplished by adopting four mental states which define the required culpability for the respective offenses, *i.e.*, intentional, knowing, reckless, and negligent.

Liparota v. United States, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088 (1985) ("eliminating the *mens rea* requirement would criminalize a broad range of apparently innocent conduct.").

The requirement that scienter is a necessary element in the proof of every crime in both common law offenses and statutory offenses is fundamental. The United States Supreme Court decision in Dennis v. United States, 341 U.S. 494, 500, 71 S.Ct. 857, 862 (1951), observed: "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Again, speaking on the necessity of scienter, the Supreme Court held:

> Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law.

Morissette, 342 U.S. at 251-252, 72 S.Ct. at 244. The Supreme Court's decision in Morissette applied common law *mens rea* to statutory crimes. Morissette, 342 U.S. at 263, 72 S.Ct. at 251. Moreover, there is an interpretive presumption that a *mens rea* is required for those crimes which have their origin in the common law. Id. Thus, in those statutory crimes, originating from the common law, which do not expressly include scienter in their definition, the *mens rea* to be applied is that *mens rea* required for the offense under the common law. See Morissette, 342 U.S. at 263, 72 S.Ct. at 251; United States v. United States Gypsum Co., 438 U.S. 422, 437, 98 S.Ct. 2864, 2873 (1978).

The offense of aggravated rape is a crime which has its origins in the

6

common law.[6]  See  State v. Wilkins, 655 S.W.2d 914, 916 (Tenn. 1983) (citations omitted).  At common law, rape was a general intent crime.  See  75 C.J.S. *Rape* § 9 (1952).  Accordingly, no intent is required other than that evidenced by the doing of the acts constituting the offense.  Id.; see also  Wilkins, 655 S.W.2d at 916; Walden v. State, 156 S.W.2d 385, 387 (Tenn. 1941).  Thus, for the indictment to be sufficient in the present case it need only charge that the accused unlawfully sexually penetrated a victim under the age of thirteen.  Again, the necessary *mens rea* is the intent to commit the unlawful act.  Based upon the foregiong, we conclude that the language of the challenged indictment sufficiently informed the accused of the charge against him.

The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:


_____
DAVID H. WELLES, Judge


_____
THOMAS T. WOODALL, Judge

_____

[6]At common law, rape was defined as "the unlawful carnal knowledge of a woman over the age of ten years forcibly and without her consent, or, as otherwise expressed, by force, or forcibly, and against her will, or such knowledge of a female child under the age of ten years either with or without her consent."  Wilkins, 655 S.W.2d at 916 (citation omitted).  We note that the offense in the present case is aggravated rape and not rape.  Our supreme court has recognized, however, that the offense of aggravated rape is but an aggravated form of the common law offense of rape.  Wilkins, 655 S.W.2d at 916.